**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Oscar N. Pinkas
Brian E. Greer
Leo Muchnik
Sara A. Hoffman
Jessica M. Wolfert

*Proposed Attorneys for the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**INVERSIONES LATIN AMERICA POWER LTDA.,** *et al.*,[1]<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 23-11891 (●)**<br><br>**(Joint Administration Requested)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY, IPSO FACTO PROTECTIONS AND ANTI-DISCRIMINATION PROVISIONS OF THE BANKRUPTCY CODE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), respectfully state as follows in support of this motion (this "**Motion**"):

**Background**

1.   On November 30, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

---

[1] The Debtors, together with each Debtor's Chilean identification number, are: Inversiones Latin America Power Ltda. (76.299.635-9); San Juan S.A. (76.319.883-9); and Norvind S.A. (76.919.070-8). The location of the corporate headquarters and the service address for Inversiones Latin America Power Ltda. is Cerro El Plomo 5680, Oficina 1202, Las Condes, Santiago, Chile.

(the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner or official committee of unsecured creditors has been appointed in these chapter 11 cases (the "**Chapter 11 Cases**").

2. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3. The Debtors are a clean energy company, headquartered in Santiago, Chile, that is engaged in the electricity generation business in northern Chile. The Debtors own and operate two wind generation plants: (a) the San Juan Project, a 193.2 MW facility located in Freirina, Vallenar in the region of Atacama and (b) the Totoral Project, a 46.0 MW facility located in Canela, in the region of Coquimbo. The San Juan Project is one of the largest, independent wind farm projects in all of Chile and has been fully operational since March 2017. The Totoral Project has been fully operational since January 2010.

4. As of the Petition Date, the Debtors have outstanding prepetition funded debt obligations in the principal amount of $408,730,000 (the "**Indebtedness Obligations**"), consisting primarily of (a) $391,230,000 in outstanding principal amount under their 5.125% senior secured notes due 2033 (the "**Existing Notes**") that were issued by Debtor Inversiones Latin America Power Ltda. ("**ILAP**") and guaranteed by Debtors San Juan S.A. ("**San Juan**") and Norvind S.A. ("**Norvind**") and (b) $17,500,000 in outstanding principal amount under that certain Credit Agreement, dated as of June 15, 2021, between and among, ILAP, as borrower, San Juan and Norvind, each as guarantors, Citibank, N.A., as administrative agent, and the lenders party thereto

2

(as amended and supplemented and in effect from time to time, the "**LC Facility Agreement**"). The Debtors also estimate that, as of the Petition Date, they have approximately $14,600,000 in trade and other unsecured debt.

5.      Since the issuance of the Existing Notes and the entry into the LC Facility Agreement, the Debtors' operations have been adversely affected by volatility in the Chilean energy market driven by severe drought conditions. This has resulted in lower energy generation at the wind farms, which has forced the Debtors to purchase energy at significantly higher prices in the spot market in order to satisfy their obligations under the power purchase agreements. As a result, the Debtors' cash flows do not support their current debt service obligations.

6.      Prior to the Petition Date, the Debtors engaged in extensive negotiations and discussions with an ad hoc group of holders of the Indebtedness Obligations that culminated in certain of the holders of the Existing Notes, representing approximately 80.21% of the aggregate outstanding principal amount of Indebtedness Obligations, entering into a restructuring support agreement with respect to a consensual restructuring on the terms set forth in the *Debtors' Joint Prepackaged Chapter 11 Plan*, dated November 29, 2023 (including all exhibits and supplements thereto, the "**Plan**") and as memorialized in the Restructuring Support Agreement, dated as of October 30, 2023 (as amended and supplemented and in effect from time to time, "**RSA**"). Thereafter, the sole lender under the LC Facility Agreement joined the RSA, as amended pursuant to the Second Amendment, on November 29, 2023, such that an additional 4.28% of holders of Indebtedness Obligations supports the Plan. As a result, pursuant to the RSA (as amended), 84.49% of the holders of Indebtedness Obligations support the Plan.

7.      The Plan embodies a settlement among the Debtors and their key creditor constituencies on a consensual transaction that will reduce the Debtors' debt service obligations

3

and position the Debtors for continued operations. Notably, the Plan provides that all Claims other than those of the holders of the Existing Notes and the lender under the LC Facility Agreement are unimpaired.

8. The above recitation is not a complete exposition of facts and circumstances. Additional information regarding the Debtors' business, operations, and capital structure, as well as the circumstances leading to the commencement of these Chapter 11 Cases, is set forth in the *Declaration of Esteban Moraga in Support of the Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"),[2] filed on or shortly following the Petition Date and incorporated herein by reference.[3]

## Jurisdiction and Venue

9. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] A more complete description of the Debtors' corporate structure and businesses and the events leading to the Chapter 11 Cases is set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Inversiones Latin America Power Ltda. and Its Debtor Subsidiaries Pursuant to Chapter 11 of the Bankruptcy Code*, filed on the Petition Date.

**Relief Requested**

11.     Pursuant to sections 362, 363, 365, 525, 1107 and 1108 of the Bankruptcy Code, the Debtors request entry of an order confirming the enforcement and applicability of the automatic stay, as well as the *ipso facto* and anti-discrimination provisions of the Bankruptcy Code.

12.     A proposed form of order granting the relief requested in this Motion is attached hereto as **Exhibit A** (the "**Proposed Order**").

**Basis for Relief**

13.     The Debtors operate as a renewable energy generation company with a presence in Chile. As part of their business, they have developed valuable relationships with national and local businesses primarily in Chile. These relationships allow the Debtors to obtain services and supplies essential to the Debtors' ability to serve their customer base on varying payment terms, including, but not limited to, short-term unsecured credit and standard credit terms.

14.     The Debtors' business and relationships have resulted in the Debtors having material creditors both in Chile and abroad. Many of the Debtors' creditors do not transact business on a regular basis with companies that have filed for chapter 11 or are otherwise unfamiliar with the scope of a debtor-in-possession's authority to conduct its business. These creditors may also be unfamiliar with the operation of the automatic stay and other provisions of the Bankruptcy Code. For this reason, the Debtors request this Court's assistance in confirming the Debtors' rights and authority under the Bankruptcy Code.

**I.    Operation of Debtors' Businesses in the Ordinary Course Is Warranted Under Sections 362, 365(e), 525, 1107 and 1108 of the Bankruptcy Code**

15.     Pursuant to section 1108 of the Bankruptcy Code, a trustee is automatically authorized to operate the business and manage the properties of the estate in the ordinary course of business. *See* 11 U.S.C. § 1108. Relatedly, section 1107(a) of the Bankruptcy Code provides

5

that, with certain exceptions not relevant here, a debtor in possession has all of the rights, powers, and duties of a trustee in a case under chapter 11. *See id*. § 1107(a). Accordingly, the Debtors are authorized under the Bankruptcy Code to operate their businesses and manage their properties in the ordinary course of business without court approval. The Debtors may nevertheless find that certain parties with whom they do business, particularly those located outside of the United States, are reluctant to continue their business relationships with the Debtors without evidence substantiating that the Debtors are indeed so authorized.

16. Additionally, the filing of these Chapter 11 Cases triggered provisions of the Bankruptcy Code that provide the Debtors with essential protections through the duration of this proceeding and which further allow the Debtors to operate in the ordinary course. Specifically, the commencement of the Chapter 11 Cases triggered the automatic stay under section 362 of the Bankruptcy Code, which enjoins all persons and governmental units from, among other things: (a) commencing or continuing a judicial, administrative or other proceeding against any of the Debtors that was or could have been commenced before the Chapter 11 Cases were filed and (b) taking any action to collect, assess or recover a claim against any of the Debtors that arose before the commencement of these Chapter 11 Cases. *See id*. § 362.

17. Further, section 365(e)(1) of the Bankruptcy Code prohibits all parties to executory contracts or unexpired leases with the Debtors from, among other things, terminating or modifying such contract, lease or any right or obligation under such contract or lease, at any time after the commencement of these Chapter 11 Cases solely because of a provision in such contract or lease that is conditioned on: (a) the insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases, (b) the commencement of these Chapter 11 Cases or (c) the appointment of a trustee. *See id*. § 365(e)(1).

6

18. Moreover, section 525 of the Bankruptcy Code prohibits and enjoins governmental units, with certain limited exceptions not applicable to these Chapter 11 Cases, from, among other things, denying, revoking, suspending or refusing to renew any license, permit, charter, franchise, or other similar grant to, condition such a grant on, or discriminate with respect to such a grant against, the Debtors solely because the Debtors (a) are debtors under the Bankruptcy Code, (b) may have been insolvent before the commencement of these Chapter 11 Cases or (c) may be insolvent during the pendency of these Chapter 11 Cases. *See id*. § 525.

19. The injunctions contained in sections 362, 365(e)(1) and 525 of the Bankruptcy Code are self-executing. They constitute fundamental debtor protections which, in combination with other provisions of the Bankruptcy Code, provide the Debtors with the essential "breathing spell" necessary to enable the Debtors' smooth and orderly transition into chapter 11. *See, e.g.*, H.R. Rep. No. 95-595 (1977*); Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 606 (S.D.N.Y. 1996) ("[Section] 362 is meant to give 'the debtor a breathing spell from his creditors [and] . . . permit [ ] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'").

20. These provisions protect a debtor's property and contracts wherever they are located and by whomever held. *See SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Secs. LLC)*, 474 B.R. 76, 84 (S.D.N.Y. 2012) (upholding extraterritorial enforcement of the automatic stay and injunction barring foreign creditor's lawsuit); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("[B]ased upon the applicable Code sections [and] other indicia of congressional intent . . . the automatic stay applies extraterritorially."); *In re*

7

23-11891-jpm    Doc 5    Filed 11/30/23    Entered 11/30/23 04:21:03    Main Document
Pg 8 of 17

*McLean Indus.*, 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987) ("The automatic stay applies extraterritorially."). As such, any actions by third parties to modify or terminate contracts or enforce their terms against the Debtors are prohibited absent Court approval; third parties must continue to perform under executory contracts until they are assumed or rejected. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 532 (1984) (holding that while the debtor may enforce the terms of the contract against the creditor, the creditor is "precluded from . . . enforcing the contract terms" of an executory contract prior to the assumption by the debtor); *see also U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 (8th Cir. 1994) ("After a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under § 365(a), those contracts remain in existence, *enforceable by the debtor but not against the debtor*.") (emphasis in original).

21. Notwithstanding the fundamental, self-executing and global nature of these statutory protections, it is likely that not all parties affected or potentially affected by the commencement of these Chapter 11 Cases may be aware of their existence. Many of the Debtors' creditors, vendors and other contractual counterparties are not located in the United States and may be unfamiliar with the operation of the Bankruptcy Code. Similarly, the Debtors and their property are subject to the rules and regulations of multiple governmental authorities, including those in foreign jurisdictions, that may not be familiar with United States bankruptcy law. Any of these entities, absent an unambiguous order of this Court, may take precipitous action against the Debtors or their property.

22. The Proposed Order, clearly stating the protections of sections 362, 365(e)(1), 525, 1107 and 1108 of the Bankruptcy Code, would help protect the Debtors from violations of these crucial provisions. The granting of the relief requested will help ensure that (a) the non-debtor parties to unexpired leases and executory contracts with the Debtors will continue to perform and

will not unilaterally terminate their contracts, (b) creditors do not seize the Debtors' assets, impose liens or take any other action in violation of the automatic stay, and (c) foreign governmental authorities do not deny, revoke or suspend any licenses or permits solely because of these Chapter 11 Cases. It also would spare the Debtors from the burden of commencing adversary proceedings to enforce such protections. Consequently, entry of the Proposed Order will assist the Debtors in effecting a prompt and orderly reorganization.

II.  **The Court has Authority to Grant the Requested Relief Under Section 105(a) of the Bankruptcy Code**

23. Pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, the Court has the authority to grant the requested relief, especially in cases with international implications. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts' power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 at 105–06 (15th ed. Rev. 2008). Such power conforms to the Court's inherent equitable authority. *See, e.g.*, *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). The relief requested herein is both necessary and appropriate to the Debtors' successful administration of these Chapter 11 Cases to optimize their postpetition performance and to maximize the value of their estates.

24. Relief similar to that requested herein has previously been granted by courts in this and other districts in large chapter 11 cases. *See, e.g.*, *In re LATAM Airlines Grp.*, Case No. 20-11254 (Bankr. S.D.N.Y. May 28, 2020) ECF No. 50; *In re Repub. Airways Holdings Inc.*, Case No. 16-10429 (Bankr. S.D.N.Y. Feb. 29, 2016) ECF No. 51; *In re Glob. Mar. Invs. Cyprus Ltd.*, Case No. 15-12552 (Bankr. S.D.N.Y. Sept. 21, 2015) ECF No. 41; *In re Nautilus Holdings*

9

*Ltd.*, Case No. 14-22885 (Bankr. S.D.N.Y. June 25, 2014) ECF No. 30; *In re Excel Mar. Carriers Ltd.*, Case No. 13-23060 (Bankr. S.D.N.Y. July 3, 2013) ECF No. 34.

### Reservation of Rights

25.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

### Notice

26.     Notice of this Motion shall be provided to the following parties or to their counsel, if known: (a) the Office of the United States Trustee for the Southern District of New York; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Ad Hoc Group; (e) UMB Bank, N.A.; (f) the LC Facility Agent and the Lenders under the LC Facility Agreement; (g) the Internal Revenue Service; and (h) all others that are required to be noticed pursuant to Bankruptcy Rule 2002. The Debtors submit that such notice is appropriate and sufficient under the circumstances and that no other or further notice need be provided.

### No Prior Request

27.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of this page intentionally left blank*]

**Conclusion**

WHEREFORE, the Debtors respectfully request that this Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: November 30, 2023  
      New York, New York

Respectfully submitted,

*/s/ Oscar N. Pinkas*  
Oscar N. Pinkas  
Brian E. Greer  
Leo Muchnik  
Sara A. Hoffman  
Jessica M. Wolfert  
Greenberg Traurig, LLP  
One Vanderbilt Avenue  
New York, New York 10017  
Telephone: (212) 801-9200  
Facsimile: (212) 801-6400  
Email:  PinkasO@gtlaw.com  
        GreerB@gtlaw.com  
        MuchnikL@gtlaw.com  
        HoffmanS@gtlaw.com  
        Jessica.Wolfert@gtlaw.com

*Proposed Attorneys for the Debtors  
and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**INVERSIONES LATIN AMERICA POWER LTDA.,** *et al.*,[1]<br><br>**Debtors.** | Chapter 11<br><br>Case No. 23-11891 (●)<br><br>**(Joint Administration Requested)** |

**ORDER RESTATING AND ENFORCING THE WORLDWIDE AUTOMATIC STAY,
IPSO FACTO PROTECTIONS AND ANTI-DISCRIMINATION
PROVISIONS OF THE BANKRUPTCY CODE**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 362, 365(e)(1), 525, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), for entry of an order (the "**Order**") enforcing and restating the automatic stay, *ipso facto* and anti-discrimination provisions; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and such notice having been adequate and appropriate under the circumstances and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration, filed contemporaneously with the Motion, and the record of the Hearing;

---

[1] The Debtors, together with each Debtor's Chilean identification number, are: Inversiones Latin America Power Ltda. (76.299.635-9); San Juan S.A. (76.319.883-9); and Norvind S.A. (76.919.070-8). The location of the corporate headquarters and the service address for Inversiones Latin America Power Ltda. is Cerro El Plomo 5680, Oficina 1202, Las Condes, Santiago, Chile.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. Pursuant to section 362 of the Bankruptcy Code, all persons (including individuals, partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic governmental or quasi-governmental units, including any state, locality or territory thereof (and all those acting for or on their behalf), regardless of whether they have received a copy of the order, are stayed, restrained and enjoined from:

   (a) commencing or continuing any judicial, administrative or other action or proceeding against the Debtors, including the issuance or employment of process that was or could have been initiated before the Debtors' Chapter 11 Cases commenced;

   (b) enforcing, against the Debtors or their estates, a judgment obtained before the commencement of these Chapter 11 Cases;

   (c) collecting, assessing or recovering a claim against the Debtors that arose before the commencement of these Chapter 11 Cases;

   (d) taking any action to obtain possession of property of the estates or of property from the estates or to exercise control over property of the Debtors' estates;

   (e) taking any action to create, perfect or enforce any lien against property of the Debtors' estates;

   (f) taking any action to create, perfect or enforce any lien against property of the Debtors, to the extent that such lien secures a claim that arose before the commencement of these Chapter 11 Cases;

  (g) offsetting any debt owing to the Debtors that arose before the commencement of these Chapter 11 Cases against any claim against the Debtors; and

  (h) commencing or continuing a proceeding before the United States Tax Court concerning the Debtors' tax liability for a taxable period the Court may determine.

3. All persons and foreign and domestic governmental units, and all those acting on their behalf, including sheriffs, marshals, constables and other or similar law enforcement officers and officials, regardless of whether they have received this Order, are stayed, restrained and enjoined from, in any way, seizing, attaching, foreclosing upon, levying against or in any other way interfering with any and all property of the Debtors or the Debtors' estates, wherever located.

4. Pursuant to section 365(e)(1) of the Bankruptcy Code, all persons (including individuals, partnerships, corporations and all those acting for or on their behalf) and all foreign or domestic governmental or quasi-governmental units including any state, locality or territory thereof (and all those acting for or on their behalf) are prohibited from modifying or terminating any executory contract or unexpired lease, or any right or obligation under such contract or lease, at any time after the commencement of these Chapter 11 Cases solely because of a provision in such contract or lease that is conditioned on:

  (a) the insolvency or financial condition of the debtor at any time before the closing of these Chapter 11 Cases;

  (b) the commencement of these Chapter 11 Cases; or

  (c) the appointment of a trustee in these Chapter 11 Cases.

5. This Order shall not affect (a) the substantive rights of any party or the availability of any of the exceptions contained in sections 362(b) and 365(e)(1) of the Bankruptcy Code or (b) the right of any party-in-interest to seek relief from the automatic stay in accordance with

3

section 362(d) of the Bankruptcy Code or with respect to an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

6. Pursuant to section 525 of the Bankruptcy Code, all foreign or domestic governmental or quasi-governmental units including any state, locality or territory thereof (and all those acting for or on their behalf) are prohibited and enjoined from (a) denying, revoking, suspending or refusing to renew any license, permit, charter, franchise or other similar grant to, (b) placing conditions upon such a grant to or (c) discriminating against any of the Debtors (or another person with whom the Debtors have been associated) solely because any of the Debtors is a debtor under the Bankruptcy Code, or may have been insolvent before or during these Chapter 11 Cases.

7. Nothing contained herein shall constitute an assumption or adoption by any Debtor of any executory contract or unexpired lease.

8. Notwithstanding anything to the contrary contained herein, this Order shall not be construed as enjoining or staying any act that is not stayed, or that is subject to an exception from the automatic stay, pursuant to the terms of section 362 of the Bankruptcy Code

9. Nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of, any claim held by any party.

10. Under the circumstances of these Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a), to the extent applicable.

11. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

4

13. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2023
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE